**In re John Paul WHITE, Debtor,**

**John Paul WHITE, Plaintiff–Appellant,**

**v.**

**Patricia Ann WHITE,
Defendant–Appellee.**

No. 87–3662.

United States Court of Appeals,
Sixth Circuit.

Argued March 28, 1988.

Decided July 11, 1988.

---

Wayne P. Marta, Vorys, Sater, Seymour & Pease, Cleveland, Ohio, Robert J. Sidman (argued), Vorys, Sater, Seymour & Pease, Columbus, Ohio, for plaintiff-appellant.

Richard A. Baumgart (argued), Dettelbach & Sicherman Co., L.P.A., Cleveland, Ohio, for defendant-appellee.

Before WELLFORD and NORRIS, Circuit Judges, and COOK,* District Judge.

WELLFORD, Circuit Judge.

The debtor-appellant challenges in this appeal the bankruptcy court's decision to lift an automatic stay to allow divorce proceedings brought by his wife to proceed in state court. The debtor claims an abuse of discretion because lifting the stay divested the bankruptcy court of its alleged exclusive jurisdiction in favor of a state tribunal. We disagree.

Patricia White, appellee, instituted divorce proceedings against her husband John on February 7, 1985 in Ashtabula County, Ohio. The divorce court ordered him to make temporary alimony payments of $800 weekly. When her husband made no payments under this order, Mrs. White moved for the appointment of a receiver for Mr. White's property.

John Paul White countered by instituting Chapter 11 bankruptcy proceedings in the bankruptcy court. For a time he remained in control of the bankruptcy estate, principally his oil and gas business, but later a bankruptcy trustee was appointed to manage the financial affairs of the bankruptcy estate. Debtor still operates the business. The effect of Mr. White's bankruptcy petition was to halt the divorce proceedings because of the automatic stay provisions of 11 U.S.C. § 362.

Mrs. White thereafter moved to lift the stay in order to allow the divorce action to proceed. She seeks permission for the state court to make an appropriate division of the marital estate which, of course, also constitutes the husband's bankruptcy es-

* The Honorable Julian A. Cook, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation.

tate. Mrs. White maintains that the state court's previous assumption of jurisdiction over the marital property took precedence over the bankruptcy court, citing *In re Washington*, 623 F.2d 1169 (6th Cir.1980), *cert. denied sub nom. Wasserman v. Washington*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 826 (1981). The bankruptcy court granted her motion and lifted the stay so that divorce proceedings, including an apportionment of the marital estate, could be accomplished. In lifting the stay, the court noted that the state court had prior *in rem* jurisdiction. While specifying that it was not allowing the state court to appoint a receiver, the bankruptcy court stated the case could be disposed of in an orderly fashion by first allowing the state court to determine, under state law, how the property should be appropriately divided between the husband and wife.

On appeal, the district court upheld this action despite debtor's challenges to its jurisdictional propriety. The district court decided that the bankruptcy court order at issue did not improperly give up bankruptcy jurisdiction to the divorce court. Further, it noted that if the state court were to overstep its role, the problem could be rectified by actions under 11 U.S.C. § 105(a).[1] Appeal to this court followed.

■ We first address whether the case has been mooted by the bankruptcy court's appointment of a trustee after it had lifted the stay, which was the subject of the appeal by the debtor to the district court. Bankruptcy rule 6009 allows a debtor in possession to institute suits, and it is clear that prior to the appointment of the trustee Paul White acted as a trustee for all practical purposes. *See Koch Refining v. Farmers Union Central Exchange*, 831 F.2d 1339, 1342 n. 3 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988). The appointment of a trustee other than White may be construed as naming a successor to the previous

trustee in possession, as governed by 11 U.S.C. § 325. That statute provides that no pending action shall be affected by naming a successor, but the new trustee shall be automatically substituted as a party. *See* 2 L. King, *Collier on Bankruptcy* § 325 (15th Ed.1983). We reject a conclusion that this case is moot under these circumstances.

Appellant argues that the jurisdiction granted the bankruptcy court in 28 U.S.C. § 1334(d) is exclusive and may not be given up in favor of a state court proceeding for any reason.[2] He also claims that *In re Washington, supra*, is no longer valid in light of 1984 amendments to the Bankruptcy Code.

We do not believe *In re Washington* controls the outcome of this case. That decision reversed a bankruptcy court's determination that it could assert jurisdiction over a debtor's property even when a state divorce court already had *in rem* jurisdiction over it. Our decision to award superior jurisdiction to the state court was based on "traditional notions of comity, which require that, as between state and federal courts, jurisdiction must be yielded to the court that first acquires jurisdiction over the property." 623 F.2d at 1172. We traced this holding to a broader doctrine which advocates granting exclusive jurisdiction to the first court asserting *in rem* jurisdiction, when both courts base jurisdiction on control of the same property. *See, e.g., Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 S.Ct. 275 (1939).

Despite the federalism interests served by such a rule, we agree with debtor's argument that the 1978 and 1984 changes to the Bankruptcy Code were primarily aimed at getting away from the kind of *in rem* jurisdiction set out in *Princess Lida* and *In re Washington*. The jurisdiction granted in 28 U.S.C. § 1334(d) indicates a

---

1. § 105(a) states: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

2. 28 U.S.C. § 1334(d) states in pertinent part: "The district court in which a case under Title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of the property of the estate."

conscious effort by Congress to grant the bankruptcy court special jurisdiction and to preclude the type of jurisdictional disputes evidenced in those cases. *See* H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 445, *reprinted in* 1978 *U.S. Code Cong. & Admin. News* 5787, 5963, 6400; 1 L. King, *Collier on Bankruptcy* § 3.01 p. 3–30 (15th ed. 1983).

■ This interpretation has been followed by other courts presented with similar circumstances. *In re Modern Boats, Inc.,* 775 F.2d 619 (5th Cir.1985) presented the situation in which an admiralty court had obtained *in rem* jurisdiction over the debtor's ship before bankruptcy was declared. Despite this previously-claimed jurisdiction, the bankruptcy court took control of the vessel. The court in *Modern Boats* declared this action to be appropriate because once a bankruptcy petition was filed, the admiralty court was stripped of jurisdiction and it became the exclusive province of the bankruptcy court. *Id.* at 620. The same result was reached in another case where, prior to bankruptcy, the admiralty court had sold a ship and only approval of the sale remained. *See In re Louisiana Ship Management, Inc.,* 761 F.2d 1025 (5th Cir.1985). The outcome in these decisions is premised upon the changes Congress made in bankruptcy court jurisdiction, and we believe we must also follow the intent reflected in the amended language of § 1334(d). The rule in *In re Washington* should therefore no longer apply to give the state court jurisdiction over property simply because it may have been the first court to exercise control over the property.

■ Whether the bankruptcy court may suspend its jurisdiction, however, is a different question. Lifting the automatic stay as provided in 11 U.S.C. § 362(d) in this case will permit the state court to exercise limited jurisdiction in the kind of matter that is traditionally exclusively reserved for state divorce courts. Bankruptcy courts in other cases have not declined to lift the stay to allow divorce proceedings to conclude. *See In re Johnson,* 51 B.R. 439 (Bankr.E.D.Pa.1985), and *Schulze v. Schulze,* 15 B.R. 106 (Bankr.S.D.Ohio 1981). The Bankruptcy Code does not define a debtor's interest in property; the answer to that question must be made after reference to state law. 4 L. King, *Collier on Bankruptcy* § 541.07 p. 541–29 (15th ed. 1983); *cf. Selby v. Ford Motor Co.,* 590 F.2d 642 (6th Cir.1979) (court looked to Michigan treatment of property rights in deciding bankrupt's interest in trust funds). With regard to the present pending state court divorce proceedings, the bankruptcy court has acted to permit the state court with expertise in such matters to decide questions that are an inherent part of the divorce process.

■ While the bankruptcy court under § 105(a) may enforce the Code for the benefit of the parties before it, and may seek a just result in light of the interests of creditors and others concerned with the bankruptcy process, we are not sure that it can review or reject the state court's action in allocation of the marital estate once the stay is lifted. This, therefore, represents some abrogation of the bankruptcy court's authority, at least as far as its ability to determine the rights in marital property. Nevertheless, we are persuaded that:

> "It is appropriate for bankruptcy courts to avoid invasions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'"

*In re MacDonald,* 755 F.2d 715, 717 (9th Cir.1985) (quoting *In re Graham,* 14 B.R. 246, 248 (Bankr.W.D.Ky.1981)). *See also Schulze, supra. Schulze* considered the position of the nondebtor spouse and concluded his or her status would be seriously compromised if the bankruptcy proceedings continued while the divorce proceedings were stayed. This was deemed to be "cause" sufficient to lift the stay within the guidelines of § 362(d)(1). 15 B.R. at 108–09. The language of § 362(d) has not been changed by the 1984 amendments to the Code and we believe the bankruptcy court properly deferred to the divorce court's greater expertise on the question of what property belongs to whom.

The 1984 amendments to the Bankruptcy Code have not rendered it a self-contained mechanism to operate entirely without reference to state law. We therefore find no abuse of discretion in the bankruptcy court's decision to defer to the traditional and expert judgment of the divorce court of the State of Ohio for the sole purpose of deciding interests in the marital estate of the debtor husband and wife. The debtor's argument simply proves too much in urging that a bankruptcy court may never give up its jurisdiction for any reason, even for a limited purpose. The provisions for lifting the stay found in § 362(d) should be deemed to apply in these circumstances for the limited purpose of allowing the state court to exercise its exclusive domestic relations authority, including decisions concerning fair allocation of the marital estate.

We find no error, therefore, in the reasoning of Judge Bodoh that, "[U]ntil the court of Common Pleas for Ashtabula County, Ohio, makes a specific determination of the property rights as between the Debtor and his spouse, what is property of the Debtor's estate in this cause is unclear, and the reorganization of Debtor's business cannot proceed in an orderly fashion." The bankruptcy judge proceeded to lift the stay so that the state court might "determine the substantive rights of the parties under applicable, non-bankruptcy domestic relations law and to allow the parties to reach, or the state court to impose, a property settlement based on the state court's inquiry into the need for support and other factors under state law." At the same time, the bankruptcy court indicated its "exclusive jurisdiction over property of the Debtor ... when the state court defines what is the property of the Debtor...."

As noted above, the district court believed any problems encountered in handing partial resolution of the matter to the divorce courts could be remedied by resort to 11 U.S.C. section 105. We agree that this is an adequate safeguard, and we also suggest that the courts below urge the trustee to appear in the divorce action. By setting out his position as representative of the debtor's creditors, the trustee could make the state court aware that other parties' interests will be affected by the property division, thus possibly facilitating a fairer settlement for all parties concerned.

We affirm the decision to lift the stay under the circumstances here because we are concerned that the Bankruptcy Code could otherwise be abused as a weapon in a marital dispute. We believe the decision to lift the stay in this case was a proper exercise of discretion, but we do not wish to establish a per se rule in every bankruptcy case involving a domestic relations situation that the bankruptcy stay must be lifted. For example, there might be times when the bankruptcy court suspects collusion between the spouses to stage a divorce to avoid payment of the just claims of creditors, and granting a stay in that situation would obviously not serve the ends of bankruptcy or divorce jurisprudence. We simply hold that whether or not to lift the automatic stay in that type of bankruptcy proceeding lies within the reasonable discretion of the bankruptcy court or the district court as the case may be.

We therefore AFFIRM the challenged action in this case.