IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 17, 2008 Session

## STATE EX REL. CITY OF CHATTANOOGA, TENNESSEE v. 2003 DELINQUENT TAXPAYERS, ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 11197     W. Frank Brown, III, Chancellor**

---

**No. E2008-00457-COA-R3-CV - FILED JANUARY 21, 2009**

---

The issue in this case is whether the trial court had jurisdiction to hear a suit filed by the City of Chattanooga ("the City") to enforce a real property tax lien on property acquired by Custom Baking Company through a sale conducted by a bankruptcy court trustee. The previous owner of the real property, which was alleged to have been delinquent in payment of its city property taxes, filed a bankruptcy petition in the United States Bankruptcy Court for the District of Delaware prior to this action. The City was listed as a creditor in the bankruptcy action and was notified of the proposed sale of the debtor's assets by the bankruptcy trustee and filed no objection. After the sale of the property, the Bankruptcy Court approved the sale free and clear of all liens, claims, and encumbrances, and retained jurisdiction "to determine any claims, disputes or causes of action arising out of or relating to the proposed sale." The City brought this action in state Chancery Court several months after the entry of the Bankruptcy Court's order. Upon review, we affirm the trial court's judgment that it lacked jurisdiction to hear and decide this case and that the City is barred by the collateral attack doctrine from bringing this action to circumvent the Bankruptcy Court's prior valid final order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

SHARON G. LEE, SP. J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Kenneth O. Fritz and Michael A. McMahan, Chattanooga, Tennessee, for the Appellant, City of Chattanooga, Tennessee.

Harold L. North, Jr., Chattanooga, Tennessee, for the Appellee, Custom Baking Company.

**OPINION**

## I. Background

Bake-Line Group LLC ("Bake-Line") filed a bankruptcy petition in the United States Bankruptcy Court for the District of Delaware pursuant to 11 U.S.C., Chapter 7, on January 12, 2004. At that time Bake-Line owned real property located at 3800 Amnicola Highway in Chattanooga. The City was served with notice of the Chapter 7 bankruptcy case, meeting of creditors, and deadlines on January 13, 2004. The City filed a proof of claim as a creditor with the Delaware Bankruptcy Court, claiming a tax lien for unpaid property taxes and stormwater fees in the amount of $152,481.61 on February 9, 2004.

The Bankruptcy Trustee filed a notice of proposed sale of property on February 26, 2004, and served notice on the City. The notice proposed to sell Bake-Line's assets to McKee Foods Corporation or its affiliate, in this case Custom Baking Company ("Custom Baking"), for a price of $7,500,000. The City filed no objection to the proposed sale.

The Bankruptcy Court entered an order pursuant to 11 U.S.C. §§ 105(a) and 363 approving the sale of Bake-Line's assets, including the property at issue here, free and clear of all liens, claims and encumbrances except those specified in an asset purchase agreement. The Bankruptcy Court's order states as follows in pertinent part:

> 6. At Closing, *the Assets shall be sold and transferred free and clear of all liens, claims, encumbrances and interests*, except as specifically provided in a definitive Asset Purchase Agreement executed . . . pursuant to the authority of this Order (the "Asset Purchase Agreement"), with any such liens, claims, encumbrances and interests attaching to the proceeds of sale to the same extent and with the same priority that existed in the Assets prior to the sale.

> 7. Except as expressly permitted or otherwise specifically provided by the Asset Purchase Agreement or this Order, *all persons and entities holding liens, claims, encumbrances and interests* (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) *in the Assets prior to Closing, including, but not limited to*, all debt security holders; equity security holders; *governmental, tax and regulatory authorities*; lenders, trade and other creditors; *hereby are forever barred, estopped and permanently enjoined from asserting such liens, claims, encumbrances and interests against the Buyer, its successors or assigns, or against the Assets.*

>               \*             \*             \*

> 10. The Buyer shall not be deemed a successor to or of the Trustee as a result of the acquisition of the Assets pursuant to the terms of the Term Sheet, the Asset Purchase Agreement and this Order. The

Buyer shall not assume any liabilities or obligations of or relating to the Assets . . . . The Buyer is not a successor to the Trustee or the Debtors. The sale is not a de facto merger or consolidation of the Debtors and the Buyer, and the Buyer's business is not a mere continuation or substantial continuation of the Debtor's businesses.

\*          \*          \*

16. *This Court shall retain jurisdiction to determine any claims, disputes or causes of action arising out of or relating to the Proposed Sale*, the Term Sheet and a subsequently executed Asset Purchase Agreement.

(Emphasis added). Additionally, the Asset Purchase Agreement provided that "[a]ll due but unpaid real and personal property taxes or similar ad valorem obligations levied with respect to the Purchased Assets for periods prior to Closing shall be resolved by the Approval Order with the result that Purchaser shall have no liability therefor and the Purchased Assets shall not be subject to any liens or claims resulting therefrom." The sale proceeded in March of 2004 as approved and ordered by the Bankruptcy Court and ownership of the real property at issue was transferred to Custom Baking.

On July 13, 2004, the City filed this action in Hamilton County Chancery Court alleging, among other things, that Custom Baking was liable for unpaid property taxes for the year 2003 and asking the trial court to enforce its alleged tax lien against Custom Baking. Following a bench trial, the trial court entered a thorough and scholarly 19-page memorandum opinion dismissing the City's action and holding: (1) the Delaware Bankruptcy Court had exclusive jurisdiction and that "the City's claim for delinquent property taxes should be asserted in the Delaware Bankruptcy Court because that court has the requisite jurisdiction over the issue," and (2) "the City's action against Custom Baking is wrongfully asserted in this court because it is a collateral attack upon an order of a court of competent jurisdiction."

## II. Issues

The City appeals, raising the issue of whether the trial court erred in holding that the Delaware Bankruptcy Court retained exclusive jurisdiction pursuant to its order and that the City is barred by the collateral attack doctrine from attempting to circumvent the Bankruptcy Court's prior valid order enjoining the City from asserting its alleged property tax lien.

## III. Analysis

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the

evidence preponderates to the contrary. Tenn. R. App. P. 13(d); **Union Carbide v. Huddleston**, 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law are reviewed de novo and are accorded no presumption of correctness. **Campbell v. Fla. Steel Corp.**, 919 S.W.2d 26, 35 (Tenn. 1996); **Presley v. Bennett**, 860 S.W.2d 857, 859 (Tenn. 1993). In this case, the facts are largely undisputed, and the issues, jurisdiction of the trial court and application of the collateral attack doctrine, involve determinations and conclusions of law.

We note at the outset that the City's appellate brief focuses almost completely upon its argument that "the sale did not meet the conditions precedent set forth in the applicable bankruptcy statute," 11 U.S.C. § 363(f), an approach that puts the proverbial cart squarely before the horse. The City's brief cites virtually no legal authority supporting the proposition that the Bankruptcy Court did not properly retain jurisdiction over the issues presented by the explicit terms of its order, and the brief does not address the collateral attack doctrine. If the trial court correctly held it could not exercise jurisdiction and that the City could not collaterally attack the Bankruptcy Court's order in state chancery court, then the City's arguments regarding the application of bankruptcy law are moot because they are only properly addressed to the Delaware Bankruptcy Court.

The Bankruptcy Court's order contains the following clear and unambiguous provisions that are dispositive of this case: (1) "all persons and entities holding liens, claims, encumbrances and interests . . . in the Assets prior to Closing, including, but not limited to, all . . . governmental, tax and regulatory authorities . . . hereby are forever barred, estopped and permanently enjoined from asserting such liens, claims, encumbrances and interests against the Buyer, its successors or assigns, or against the Assets," and (2) "[t]his Court shall retain jurisdiction to determine any claims, disputes or causes of action arising out of or relating to the Proposed Sale." The City does not assert that the Bankruptcy Court did not properly assume jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334; it recognized the Bankruptcy Court's jurisdiction by making an appearance and filing a proof of claim as a creditor. Further, the City had notice of every pertinent step in Bankruptcy Court prior to the sale of the debtor's assets and, therefore, had ample opportunity to object and have its position and arguments heard and considered before the Bankruptcy Court.

The sole authority cited by the City in support of its argument that "after the property was no longer part of the bankruptcy estate, the Bankruptcy Court no longer retained exclusive jurisdiction over the property" is **Chao v. Hospital Staffing Services., Inc.**, 270 F.3d 374 (6th Cir. 2001). Although the sentence ostensibly quoted from the **Chao** opinion in the City's brief is not to be found therein, the **Chao** court did state in pertinent part as follows:

> Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of other courts is partially stripped. *See In re United States Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir.1997). In addition to exclusive jurisdiction over the bankruptcy proceeding itself, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e); *see also In re*

> ***Modern Boats, Inc.,*** 775 F.2d 619, 620 (5th Cir.1985). However, the
> exclusivity of the bankruptcy court's jurisdiction reaches only as far
> as the automatic stay provisions of 11 U.S.C. § 362. That is, if the
> automatic stay applies to an action directed at the debtor or its
> property, jurisdiction is exclusive in the bankruptcy court. If the
> automatic stay does not apply – *e.g.,* if an exception to the stay covers
> the action in question – the bankruptcy court's jurisdiction is
> concurrent with that of any other court of competent jurisdiction.
> And if the bankruptcy court grants relief from the stay with respect to
> certain property or claims, *see* 11 U.S.C. § 362(d), (e), (f), the
> bankruptcy court retains jurisdiction over those matters, although its
> jurisdiction is concurrent with that of other courts of competent
> jurisdiction.

***Chao,*** 270 F.3d at 383. The ***Chao*** case, addressing issues very different from those presented here, held (in the words of the prefatory syllabus paragraph) that a "hot goods" action the Secretary of Labor had brought under the Fair Labor Standards Act to prevent a trustee of the bankrupt employer's Chapter 7 estate from attempting to transport in interstate commerce records that the employer's staff had produced, during the last weeks of employer's existence, without being compensated therefor did not come within the "police or regulatory power" exception to the automatic stay, and could be pursued in nonbankruptcy forum only if the Secretary first obtained relief from the stay. ***Id.***

The present case does not involve an exception to the automatic stay in a bankruptcy proceeding, such as the "police or regulatory power" exception addressed in ***Chao***. Nor did the ***Chao*** court, which ultimately held the bankruptcy court had exclusive jurisdiction under its facts, address the situation of a subsequent collateral attack in state court upon a final order validly issued by a bankruptcy court that specifically retains jurisdiction over causes of action arising out of or relating to the authorized sale of a debtor's assets. Thus, the ***Chao*** opinion is of no avail to the City under the present circumstances.

The trial court also correctly ruled that the City was barred from collaterally attacking the Delaware Bankruptcy Court's valid final order in Tennessee Chancery Court. This court recently observed the following principles regarding the rule against collateral attack upon another court's judgment:

> "A collateral attack is an attempt to avoid, defeat, or evade a
> judgment, or to deny its force and effect, in some incidental
> proceeding not provided by law for the express purpose of attacking
> it." 50 C.J.S. *Judgments* § 505 (1997). It is well settled that a
> judgment or order cannot be collaterally attacked unless it
> affirmatively appears, on the face of the record, "(1) that the Court

had no general jurisdiction of the subject matter of the litigation; or (2) that the decree itself is wholly outside of the pleadings, and no binding consent thereto is shown in the record; or (3) that the Court had no jurisdiction of the party complaining, in person or by representation of interest; in which case it is void only as to such party, or his privies." **Gentry v. Gentry**, 924 S.W.2d 678, 680 (Tenn. 1996). However, "[w]here no relief is sought against a judgment, as, for instance, where the proceeding is for the purpose of construing the judgment, or determining its scope and effect or its nature, there is no infraction of the rule against collateral attack." 50 C.J.S. *Judgments* § 505 (1997).

**Andrews v. Fifth Third Bank**, 228 S.W.3d 102, 107-08 (Tenn. Ct. App. 2007); *see also* **Sims v. Adesa Corp.,** No. E2007-00899-COA-R9-CV, 2008 WL 793786, at *5 (Tenn. Ct. App. E.S., filed Mar. 25, 2008), *perm. app. denied* Oct. 27, 2008.

In this case, the Bankruptcy Court's order expressly states that governmental entities are "forever barred, estopped and permanently enjoined from asserting" any prior "liens, claims, encumbrances and interests" against the real property at issue, so it is clear that the City's request that the Chancery Court enforce an allegedly unpaid tax lien incurred prior to the bankruptcy action is a direct attack on the earlier judgment. It is equally clear that none of the exceptions to the rule against collateral attack as discussed in *Andrews* applies here because, among other reasons, the valid jurisdiction of the Bankruptcy Court has not been questioned. Any claim the City had should have been raised in the Delaware Bankruptcy Court, which retained jurisdiction and in which the City had notice of all pertinent proceedings and ample opportunity to present its arguments regarding the sale of debtor's assets and the Bankruptcy Code. We therefore affirm the trial court's ruling that the City is barred from asserting this action in state chancery court.

## *IV. Conclusion*

The judgment of the trial court is affirmed in its entirety. Costs on appeal are assessed to the Appellant, City of Chattanooga, Tennessee.

_____
SHARON G. LEE, SPECIAL JUDGE